**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**John Burke**
7917 Nottingham Way
Ellicott City, MD

**Plaintiff,**

v.

**Paul J. Wiedefeld**
General Manager,
Washington Metropolitan Area Transit Authority, in his official capacity only
600 5th Street, N.W.
Washington, DC 20001

**Serve:**
**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**
Office of General Counsel
600 Fifth Street, NW Washington, DC 20001
Phone (202) 962-1496
Fax: (202) 962-2550

Defendant.

Case: 1:19-cv-03145 (JURY DEMAND)
Assigned To : Jackson, Ketanji Brown
Assign. Date : 10/21/2019
Description: TRO/PI (D-DECK)

**Complaint for Declaratory and Injunctive Relief**

**Parties**

**1.** The Plaintiff, John Burke, is an approximately 30 year old man who engages in the activity of panhandling in the District of Columbia, usually in the area of the USDA building and Smithsonian Metro Station at the 12th & Independence exit, and the l'Enfant Plaza Metro Station.

**2.** Mr. Burke suffered brain damage from a trauma to the head a few years ago and as a result he sometimes goes into convulsions and blacks out.

**3.** So, he is always accompanied by his companion dog.



RECEIVED
OCT 21 2019
Clerk, U.S. District and Bankruptcy Courts

**4.** The companion dog performs assistive tasks for Mr. Burke such as guarding and protecting him when he blacks out/ goes into convulsions.

**5.** The Defendant Paul J. Wiedefeld, is the General Manager and Chief Executive Officer of the Washington Metropolitan Area Transit Authority ("WMATA"), a tri-jurisdictional agency created by an interstate compact among the Commonwealth of Virginia, the State of Maryland, and the District of Columbia to plan, develop, build, finance, and operate a regional transportation system in the national capital area.

**6.** With respect to his management and conduct of the affairs of WMATA, the Defendant acts under color of state law.

**7.** The Defendant Paul J. Wiedefeld is sued in his official capacity only.

## Jurisdiction and Venue

**8.** This Court has original "federal question" jurisdiction over the 42 U.S.C. § 1983 claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

**9.** Venue is appropriate in this judicial District. Each of the claims for relief arose in this judicial District and all events described herein occurred in the District of Columbia, and WMATA's executive offices are headquartered in the District of Columbia.

## Details of Mr. Burke's Arrests for Panhandling by Metro Transit Police

### October 21, 2016 Incident

**10.** On Friday, October 21, 2016 at approximately 5:50 p.m., Mr. Burke was sitting outside of the USDA building and Smithsonian Metro station at the 12th & Independence exit.




**11.** At that time Mr. Burke customarily sat in the same spot against the wall next to the stairs of the USDA building.

**12.** 

**13.** The spot, shown in the picture above with Mr. Burke sitting in it, is around the "corner" from the escalator entrance to the Metro and it is, Mr. Burke believes, more than 15 feet from the entrance/ exit of any escalator.

**14.** It is in the vicinity of a Metro bus stop as the first picture shows, and as the picture below shows.

**15.** 


**16.** On October 21, 2016, two WMATA officers engaged with Mr. Burke, Officer Bedenbaugh (#601) and Officer Toplyn (#521).

**17.** At first, the officers came up the Metro escalator and walked past Mr. Burke to the intersection. They did not initially acknowledge Mr. Burke.

**18.** Then the officers came walking back toward Mr. Burke.

**19.** Mr. Burke was holding a cardboard sign that said "Grateful for anything."

**20.** Officer Bedenbaugh said "You can't be doing that. It's panhandling."

**21.** Officer Bedenbaugh told Mr. Burke that the rule is that one cannot panhandle within 15 feet from a Metro escalator and within 150 feet from a bus stop.

**22.** Officer Bedenbaugh said that this is WMATA jurisdiction and he can write tickets inside of that jurisdiction.

**23.** At the moment that the officers were standing over Mr. Burke, a woman came down the set of stairs closest to Mr. Burke from the USDA Wing 1 exit and handed him $10.

**24.** Officer Bedenbaugh said "Well there's your ticket right there."

**25.** Mr. Burke has seen the woman many times before. She usually comes out of the 3rd Wing exit. She works for the USDA. She is in her late 40s or early 50s and is blonde.

**26.** Mr. Burke recounted how even "SPOs" (special police officers) at the USDA building come out and give him money and hang out with him.

**27.** Officer Bedenbaugh said "You need to leave or I'll give you a ticket."

**28.** Mr. Burke said again that this is freedom of speech.

**29.** Mr. Burke requested that Officer Bedenbaugh call his supervisor.

**30.** Mr. Burke said "If your supervisor says give me a ticket then give me a ticket, but he will tell you this is freedom of speech."

**31.** Officer Bedenbaugh contacted his supervisor, Sergeant Miller (# S117).

**32.** Sgt. Miller, a plainclothes WMATA detective named Officer Sanchez, and a man in a white shirt came to the scene. The man in the white shirt was on his phone and did not really engage in the situation.

**33.** Sgt. Miller said something like "I'm not going to tell the officer not to write the ticket because I wasn't there to see it take place. If he believes it was aggressive panhandling then it was."

**34.** Officer Bedenbaugh wrote a ticket and then he gave the ticket to Mr. Burke.

**35.** Sgt. Miller said "You're gonna sign this ticket when he gives it to you."

**36.** Officer Bedenbaugh and Sgt. Miller both said "If you don't sign the ticket, you're going to jail."

**37.** Mr. Burke said he wanted to speak with Sgt. Miller's supervisor.

**38.** Sgt. Miller tried to call his supervisor three times on his cell phone before he gave up. Sgt. Miller refused to try to call the supervisor on the radio.

**39.** Officer Bedenbaugh said "After you sign this ticket, you will pack your bags and leave."

**40.** Mr. Burke signed the ticket. The WMATA ticket number is: 2016-15596

**41.** Mr. Burke said he would still like to wait for Sgt. Miller's supervisor.

**42.** Officer Bedenbaugh said "If you don't leave now, you're going to jail."

**43.** Mr. Burke wanted to take Metro with his companion dog.

**44.** But, the officers told him they would arrest him if he entered Metro with his companion dog.

**45.** So, Mr. Burke and his dog walked away from the area.

**After the incident**

**46.** On the Thursday after the incident (probably the 27th), Mr. Burke went to the WMATA headquarters in Judiciary Square.

**47.** Mr. Burke walked in and the woman at the front asked him if he was there to pay a ticket.

**48.** Mr. Burke said no, that he wanted a court date.

**49.** The woman handed Mr. Burke a phone and told him to call the number to the Warrants and Fugitives Office.

**50.** Mr. Burke called, but no one answered, so he left a voicemail.

**51.** Mr. Burke told the woman that while he was there he wanted to file a Constitutional rights complaint against the officers who were involved in his receiving the ticket.

**52.** Mr. Burke asked the woman to make it available to him to file this complaint.

**53.** The woman told Mr. Burke that he can file a complaint online.

**54.** Mr. Burke wanted to file a complaint in person.

**55.** The woman called Lt. Bowen from Internal Affairs.

**56.** Lt. Bowen and Sgt. Alvarez came downstairs.

**57.** They waited while Mr. Burke handwrote his complaint on a pad of paper.

**58.** They told Mr. Burke that he needs to email Warrants and Fugitives to get a court date and that that office would call him back and then Mr. Burke would need to come out in person again to be given a court date.

**59.** Mr. Burke emailed Warrants and Fugitives.

**60.** Within a week after Mr. Burke emailed, Mr. Burk called Lt. Bowen then went and met with him at the Ft. Totten Metro station on Wednesday (possibly).

**61.** Sgt. Fisher was present during the meeting.

**62.** Sgt. Fisher told Mr. Burke the ticket has been voided.

**63.** Mr. Burke asked why.

**64.** Sgt. Fisher said that it was voided because it was not properly input into the system.

**65.** Sgt. Fisher gave Mr. Burke a Notice to Appear form that said that the ticket was voided.

**66.** Mr. Burke said that he wanted a court date anyway.

**67.** Sgt. Fisher explained that it would be more hoops to jump through to get a court date, so Mr. Burke decided not to pursue it.

**68.** Since the incident, Mr. Burke has returned to the same spot at the Smithsonian Metro station to sit with his dog and his sign.

**February 28, 2018 Incident.**

**69.** On 02/28/2018 at 16:10 hours, MTP Officer Logan Kent was on patrol around the station entrance (7th St./Maryland Ave., SW) of l'Enfant Plaza Metro Station.



**70.** MTP Officer Logan Kent observed Mr. Burke sitting down on the ground, leaning against the station entrance parapet wall on WMATA property with a dog in his company, displaying a cardboard sign with writing on it "grateful for anything," which MTP Officer Logan Kent interpreted to mean that he was panhandling for money from passers- by.

**71.** MTP Officer Logan Kent seized and detained Mr. Burke and advised him of the violation of panhandling in the District of Columbia (D.C. Code 22-2302(b) ("No person may ask, beg, or solicit alms in any public transportation vehicle; or at any bus, train, or subway station or stop.").

**72.** MTP Officer Logan Kent issued Mr. Burke a Metropolitan Transit Police violation citation #203795 for violation of D.C. Code 22-2302(b) which ordered him to appear in Superior Court on 5/22/2019.

**73.** MTP Officer Logan Kent then ordered him to leave WMATA property, so Mr. Burke left.

**August 22, 2019 Incident**

**74.** On August 22, 2019, about 8:00 a.m., Mr. Burke was sitting outside of the Metro Station entrance (7th St./Maryland Ave., SW) of l'Enfant Plaza Metro Station with his companion dog.

**75.** 

**76.** Mr. Burke was sitting down on the ground, leaning against the station entrance parapet wall on WMATA property in the location in the picture, displaying a cardboard sign with writing on it "grateful for anything," panhandling for money from passers- by. Mr. Burke was more than 15 feet from the escalator entrance.



**77.**

**78.** An MTP Officer seized and detained Mr. Burke and advised him he was panhandling in violation of District of Columbia (D.C. Code 22-2302(b) ("No person may ask, beg, or solicit alms in any public transportation vehicle; or at any bus, train, or subway station or stop.").

**79.** The MTP Officer issued Mr. Burke a Metropolitan Transit Police violation citation for panhandling. The citation required him within 30 days to either: (1) pay $50 in "collateral," or (2) request a court date in Superior Court to respond to the charge.

**80.** Mr. Burke has attempted to request a court date.

**81.**



Metro Transit Police

VIOLATION CITATION

**82.** The MTP Officer then ordered him to leave WMATA property, and so Mr. Burke and his companion dog left by foot, because Mr. Burke was afraid that the officers would arrest him if he tried to take Metro with his companion dog because Metro Transit Police officers had threatened to do that in the past.

**Details of Arrests for Panhandling by Metro Transit Police of Other People**

**Mr. Reginald Bryant**

**83.** On 3/18/2015 at about 5:30 pm Mr. Bryant was arrested by two officers of the Metro Transit Police, including Officer Poulos, at the WMATA Union Station Metro Station in Washington, D.C. for aggressive panhandling in what the arresting officer described in the Gerstein as "a public transportation area."

**84.** Mr. Bryant was in the "above ground" free areas of the Union Station Metro Station at all times when the officers suspected him of panhandling.

**85.** The "above ground" free areas of the WMATA stations including the Union Station Metro Station are public fora.

**86.** The area the arresting officer described in the Gerstein as "a public transportation area" is a public forum.

**87.** The officers also took an amount of money from Mr. Bryant's person for evidence and possibly for civil forfeiture, under D.C. law.

**Mr. Bryant at the Station**

**88.** Mr. Bryant was then transported to the 1st District police station.

**89.** Mr. Bryant was processed pursuant to his arrest, including being fingerprinted by the MPD, and placed in a holding cell with other persons in a cell at the 1st District.

**90.** At some point Mr. Bryant was transported to Superior Court for presentment of his charges before a judicial officer the next day.

**Mr. Louis White**

**91.** On 9/25/2015 at about 4:30 pm Mr. White was arrested by an officer of the Metro Transit Police, Officer Poulos, at the NOMA-Gallaudet U Metro Station in Washington, DC for panhandling in what the arresting officer described in the Gerstein as "a public transportation area."

**92.** The area the arresting officer described in the Gerstein as "a public transportation area" is a public forum.

**93.** Mr. White was in the "above ground" free areas of the WMATA NOMA-Gallaudet U Metro Station at all times when the officers suspected him of panhandling.

**94.** The "above ground" free areas of the WMATA stations including the NOMA-Gallaudet U Metro Station are public fora.

**Mr. Marc Gatling**

**95.** On 11/30/2015 at about 9:15 pm Mr. Gatling was arrested by an officer of the Metro Transit Police at the WMATA Eastern Market Metro Station in Washington, DC for panhandling in the "above ground" free areas of the Eastern Market Metro Station.

**96.** Mr. Gatling was in the "above ground" free areas of the Eastern Market Metro Station at all times when the officers suspected him of panhandling.

**97.** The "above ground" free areas of the WMATA stations including the Eastern Market Metro Station are public fora.

**The D.C. Panhandling Statute Is Facially Unconstitutional Under the First Amendment**

**98.** Regulation of speech is "content based" if a law applies to particular speech because of the topic discussed or the idea or message expressed.

**99.** Such a statute "must be narrowly tailored to promote a compelling Government interest," and "the least restrictive means" necessary for achieving the government's purpose.

**100.** Panhandling is expressive conduct that is protected 1st Amendment activity.

**101.** The definition section of the statute at D.C. Code § 22-2301(2) defines "[a]sk, beg, or solicit alms" in all of its applications as including "the spoken, written, or printed word or such

other act conducted for the purpose of obtaining an **immediate donation** of money or thing of value." (emphasis added).

**102.** Barring requests for money now, but not regulating requests for money later, is a form of content discrimination.

**103.** Under the provisions of the D.C. panhandling statute, a police officer would have to listen to a person's solicitation for money and determine whether he was asking for an immediate donation before finding a violation.

**104.** A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of *animus* toward the ideas contained in the regulated speech.

**105.** A speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter.

**106.** The D.C. panhandling statute violates the First Amendment of the United States Constitution because it is not "narrowly tailored to promote a compelling Government interest," and there are "less restrictive alternatives that would serve the Government's purpose."

**District's Panhandling Statute**

**107.** D.C. Code § 22-2301 *et seq.* is the District's panhandling statute even though the statute does not use the term "panhandling."

**108.** D.C. Code § 23-101(a) provides that prosecutions for offenses (such as panhandling which has a maximum jail time of ninety days) punishable by not more than a year in jail, shall be prosecuted by the OAG.

**109.** But, D.C. Code § 23-101(d) and (e) provide in pertinent part that the "United States attorney for the District of Columbia or his assistants" may prosecute offenses under the

panhandling statute (and other offenses punishable by not more than a year in jail) if but only if the Attorney General for the District of Columbia "consents."

**Definition of Panhandling in the Panhandling Statute**

**110.** The definition section of the statute at D.C. Code § 22-2301(2) defines "ask, beg, or solicit alms" in all of these situations as including "the spoken, written, or printed word or such other act conducted for the purpose of obtaining an **immediate donation** of money or thing of value." (emphasis added).

**111.** The statute covers oral, written, and implicit or "silent" requests for an **immediate donation** of money or thing of value.

**The "above ground" free areas of the WMATA Metro stations are public forums**

**112.** The "above ground" free areas of the WMATA Metro stations are public forums.

**113.** The McFarlin zones are inside of the "above ground" free areas of the WMATA Metro stations because they are in the areas covered by the WMATA use regulations.

**114.** The current version of the WMATA regulations (including Section 100.10 Free Speech Activities) is available on WMATA's website and is incorporated by reference herein. Regulations Concerning the Use of WMATA Property and Related Board Resolutions (the "WMATA regulations"). https://www.wmata.com/about/records/public_docs/upload/UseRegulations.pdf

**115.** Section 100.10, Free Speech Activities, in the current version is identical to the passage relied on by the McFarlin Court.

**Panhandling in the Metro Station under the Panhandling Statute**

**116.** D.C. Code § 22-2302(b) governs (among other things) panhandling in the Metro Stations[1].

---

[1] The text of Section (b) reads: "No person may ask, beg, or solicit alms in any public transportation vehicle; or at any bus, train, or subway station or stop." Plaintiffs challenge this section only as it applies to Metro Stations and Metro bus stops.

**117.** As drafted, the text of D.C. Code § 22-2302(b) criminalizes panhandling anywhere in a Metro Station.

**118.** But, the District of Columbia Court of Appeals placed a limiting gloss on D.C. Code § 22-2302(b) which defines the phrase in Section 22-2302(b), "subway station or stop," in light of WMATA's regulations as meaning within fifteen feet of the escalator entrance or exit. McFarlin v. District of Columbia, 681 A.2d 440, 448 (D.C. 1996).

**119.** Therefore, as construed by the District of Columbia Court of Appeals in McFarlin, D.C. Code § 22-2302(b) prohibits all panhandling (whether "aggressive" or nonaggressive) in Metro Stations within fifteen feet of the escalator entrance (the McFarlin Zone").

**120.** But, conversely, as construed by the District of Columbia Court of Appeals in McFarlin, D.C. Code § 22-2302(b) does not apply anywhere else in a Metro Station.

**121.** So, as construed by the District of Columbia Court of Appeals in McFarlin, D.C. Code § 22-2302(b) does not apply in Metro Stations outside the McFarlin Zones.

**122.** The Metro Transit Police arrested Mr. Burke and other persons in the last several years and continues to do so for panhandling in the Metro Stations outside of the McFarlin Zones (that is, outside of areas more than fifteen feet from the escalator entrances) even though the District of Columbia Court of Appeals limited the application of Section (b) in Metro Stations to the McFarlin Zone areas, that is, areas "within fifteen feet of the escalator entrance."

**Panhandling at a Bus Stop under the Panhandling Statute**

**123.** D.C. Code § 22-2302(b) governs (among other things) panhandling at bus stations.

**124.** The text of Section (b) reads in part: "No person may ask, beg, or solicit alms ... at any bus ... station or stop."

**125.** As drafted, the text of D.C. Code § 22-2302(b) criminalizes panhandling at Metro bus stations.

**WMATA Regulations Governing Use of WMATA Property**

**126.** WMATA has promulgated use regulations governing the use of WMATA Property.

**127.** The use regulations have provisions which apply to "Free Speech Activity."

**128.** The use regulations define "Free Speech Activity" as "the organized exercise of rights and privileges that deal with political, religious, or social matters and are non-commercial." Section 100.7(l).

**129.** The use regulations restrict "Free Speech Activity" to the free-area - "above ground" of Metro stations at a distance greater than fifteen (15) feet from any escalator, stairwell, faregate, mezzanine gate, kiosk, or fare card machine.

**130.** The use regulations prohibit in connection with any "Free Speech Activity" carrying any signs or placards that are more than 18" x 18" or are affixed to a pole.

**Substantive Allegations for Claims**

**Claim 1**

**§ 1983 Liability under the First Amendment under the panhandling statute**

**131.** Mr. Burke adopts by reference the contents of the preceding paragraphs as if fully set forth herein.

**132.** Barring requests for money now but not regulating requests for money later as the panhandling statute does is a form of content discrimination.

**133.** The panhandling statute therefore violates the First Amendment of the Constitution of the United States because it is not "narrowly tailored to promote a compelling Government interest," and there are "less restrictive alternatives that would serve the Government's purpose."

**134.** WMATA's enforcement of the panhandling statute against Mr. Burke injured him by subjecting him to arrest and loss of liberty.

**135.** Accordingly, Mr. Barrett is entitled to relief as set forth below.

**§ 1983 Liability under the First Amendment**

**Claim 2**

**§ 1983 Liability under the First Amendment under the panhandling statute**

**136.** Mr. Burke adopts by reference the contents of the preceding paragraphs as if fully set forth herein.

**137.** WMATA has a policy and practice of applying the panhandling statute as it relates to Metro Stations and bus stops to people regardless whether they are in or outside the McFarlin zones.

**138.** Barring requests for money now but not regulating requests for money later as the panhandling statute does is a form of content discrimination.

**139.** WMATA's barring requests for money now but does not ban requests for money later so WMATA's policy is a form of content discrimination.

**140.** WMATA's policy and practice therefore violates the First Amendment of the Constitution of the United States because it is not "narrowly tailored to promote a compelling Government interest," and there are "less restrictive alternatives that would serve the Government's purpose."

**141.** Alternatively, even if the panhandling statute does not apply to WMATA's treatment of Mr. Burke, arresting him for panhandling still violated his First Amendment rights.

**142.** Panhandling is protected speech, the areas where Mr. Burke were panhandling were public forums, the policy and practice does not serve a significant government interest, (2) it is not

narrowly tailored to serve its purported interest, and (3) it does not leave open ample alternative channels of communication.

**143.** WMATA's enforcement of the panhandling statute against Mr. Burke, or alternatively, arresting him for panhandling, injured him by subjecting him to arrest and loss of liberty.

**144.** Accordingly, Mr. Barrett is entitled to relief as set forth below.

## Relief Requested

Mr. Burke herein respectfully request that this Court grant the following relief:

**A.** Enter judgment in his favor on all of his claims;

**B.** Declare the definition of "panhandling" under Section 22-2301(2) of the panhandling statute facially unconstitutional under the First Amendment and enjoin the Metro Transit Police from implementing any provision of D.C. Code § 22-2301(2) and Section 2302(a) or Section 2302(b).

**C.** Award Mr. Burke nominal damages in connection with any declaration by this Court that D.C. Code § 22-2301(2) is unconstitutional or interfering with Mr. Burke's panhandling on WMATA property is unconstitutional.

**D.** Grant a jury trial on all claims so triable.

**E.** Award Mr. Burke injunctive relief in the form of barring the defendant, the Washington Metropolitan Area Transit Authority ("WMATA"), from interfering with his practice of "panhandling" in the vicinity of WMATA station entrances and on WMATA property generally and accepting donations from passersby;

**F.** Award Mr. Burke injunctive relief in the form of sealing his relevant arrest records and declaring his arrests and citations a nullity

**G.** Award plaintiffs' attorneys fees and costs incurred in bringing this action under 42 U.S.C. § 1988; and

**H.** Grant such other relief as this Court deems just and proper.

Respectfully submitted,

William Claiborne / JSS
/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579

Counsel for Plaintiff Mr. Burke

717 D Street, N.W
Suite 300
Washington, DC 20004
Phone 202/824-0700
Email claibornelaw@gmail.com

**JURY DEMAND**

Plaintiffs demand a jury of six as to all claims so triable.
William Claiborne / JSS
/s/William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Plaintiff and the Classes