## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN BURKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-3145-KBJ |
| | ) | |
| PAUL J. WIEDEFELD, General Manager, | ) | |
| Washington Metropolitan Area Transit Authority, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,

Defendant Paul J. Wiedefeld, General Manager of the Washington Metropolitan Area Transit

Authority, hereby moves to dismiss the Amended Complaint for Declaratory and Injunctive Relief.

In support of this motion, Defendant relies on the accompanying Memorandum of Points and

Authorities in Support of His Motion to Dismiss and Declaration of Ronald A. Pavlik, Jr.  A

proposed order is attached.

Dated: February 24, 2021                    Respectfully submitted,

                                             /s/ Anthony T. Pierce
                                             Anthony T. Pierce
                                               D.C. Bar. No. 415263
                                             Caroline L. Wolverton
                                               D.C. Bar No.  496433
                                             Jason E. Gangwer
                                               D.C. Bar No. 888314556
                                             AKIN GUMP STRAUSS HAUER & FELD, LLP
                                             2001 K Street, N.W.
                                             Washington, D.C. 20006
                                             Phone: (202) 887-4000
                                             Fax: (202) 887-4288
                                             apierce@akingump.com

                                             Rex S. Heinke
                                               D.C. Bar No. CA00080

CALIFORNIA APPELLATE LAW GROUP LLP
811 Wilshire Blvd.
17th Floor
Los Angeles, CA 90017
Phone: (213) 878-0404
rex.heinke@calapplaw.com

*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN BURKE,                           )
                                       )
Plaintiff,                          )
                                       )
v.                                 )       Civil Action No. 19-3145-KBJ
                                       )
PAUL J. WIEDEFELD, General Manager,  )
Washington Metropolitan Area Transit Authority,  )
                                       )
Defendant.                         )
_____)

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING HIS MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................1

    A.    Factual Background ................................................................................1

    B.    Procedural Background ..........................................................................3

ARGUMENT ....................................................................................................................5

    I.    Legal Standards ....................................................................................5

    II.    Plaintiff's Challenge to WMATA's Permit Requirements Should Be Dismissed Under Rule 12(b)(1) for Lack of Standing ............................5

        A.    Plaintiff Fails to Demonstrate Causation ...................................6

        B.    Plaintiff Fails to Demonstrate Redressability ............................7

    III.    Plaintiff's First Amendment Challenge to WMATA's Enforcement of the Panhandling Statute Should Be Dismissed Under Rule 12(b)(6) ..........8

        A.    Panhandling is Conduct, Not Protected Speech.........................9

        B.    *McFarlin* Does Not Foreclose WMATA's Enforcement of the D.C. Panhandling Statute as to Plaintiff..............................................10

CONCLUSION................................................................................................................13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................................5

*Comm. on Judiciary of U.S. House of Representatives v. McGahn,*
    968 F.3d 755 (D.C. Cir. 2020)...........................................................................5, 6, 7

*Ctr. for Biological Diversity v. McAleenan,*
    404 F. Supp. 3d 218 (D.D.C. 2019) ..................................................................5, 13

*Exhaustless Inc. v. Fed. Aviation Admin.,*
    931 F.3d 1209 (D.C. Cir. 2019) .............................................................................8

*In re Grand Jury Subpoena,*
    912 F.3d 623 (D.C. Cir. 2019) .............................................................................12

*Kareem v. Haspel,*
    No. 19-5328, 2021 WL 137361 (D.C. Cir. Jan. 15, 2021) .....................................6

*Lewis v. Casey,*
    518 U.S. 343 (1996)...............................................................................................6

*McFarlin v. District of Columbia,*
    681 A.2d 440 (D.C. 1996) ........................................................................... *passim*

*Rodgers v. Bryant,*
    942 F.3d 451 (8th Cir. 2019) ...............................................................................10

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998).................................................................................................7

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014)...............................................................................................6

*Sykes v. Fed. Election Comm'n,*
    335 F. Supp. 2d 84 (D.D.C. 2004) ......................................................................7, 8

*U.S. Telecom Ass'n v. FCC,*
    825 F.3d 674 (D.C. Cir. 2016) ...............................................................................9

*Vill. of Schaumburg v. Citizens for a Better Env't,*
    444 U.S. 620 (1980)............................................................................................9, 10

**Statutes and Rules**

42 U.S.C. § 1983 ................................................................................................3, 4

D.C. Code §§ 22-2301–2306 ...................................................................................1

D.C. Code § 22-2301(2) ...........................................................................................9

D.C. Code § 22-2302 ...............................................................................................2

D.C. Code § 22-2302(b) .......................................................................................2, 7

Federal Rule of Civil Procedure 12(b)(1) ...................................................5, 7, 8, 13

Federal Rule of Civil Procedure 12(b)(6) ......................................................5, 8, 13

**Other Authorities**

Noah Feldman, *Brother, Spare Me a Dime. Or Else.*, BLOOMBERG (May 10, 2016) ......................9

REGULATIONS CONCERNING THE USE OF WMATA PROPERTY (2018) ...............................7, 11, 13

## INTRODUCTION

Plaintiff revised his claims in the Amended Complaint, but the claims still fail to present a viable challenge to his arrests for panhandling at Metro stations. This lawsuit against the General Manager of the Washington Metropolitan Area Transit Authority ("WMATA") is unfounded and should be dismissed.

The Court lacks subject matter jurisdiction over Plaintiff's challenges to WMATA's permit requirements (Claims 2–4) because he lacks standing to assert them. Plaintiff was arrested for violating the panhandling statute, not for failing to have a permit.

Plaintiff's First Amendment claims fail on the merits because panhandling is conduct rather than protected speech. In any event, Claim 1 fails because WMATA validly applied the District of Columbia Panhandling Control Act, D.C. Code §§ 22-2301–2306, in the Metro station areas where Plaintiff was arrested. The D.C. Court of Appeals decision on which Plaintiff relies, *McFarlin v. District of Columbia*, 681 A.2d 440 (D.C. 1996), does not foreclose WMATA's enforcement of the panhandling statute against Plaintiff because that decision did not address the statute's application to the areas at issue in this case. To the contrary, *McFarlin*'s reasoning supports its constitutional application to the facts presented here.

## BACKGROUND

### A.    Factual Background

According to the Amended Complaint, Plaintiff engages in panhandling in the District of Columbia, usually in the above-ground areas of the Smithsonian Metro station, at the 12th Street & Independence Avenue entrance, and the L'Enfant Plaza Metro station. Am. Compl. for Declaratory and Inj. Relief ¶ 1 ("Am. Compl."), ECF No. 23. He alleges that those areas are fifteen feet "outside of and away from any escalator," *id*. ¶ 7, apparently referring to the entrance/exit of

the station escalators, *id*. ¶¶ 23, 84, 114 (alleging that Plaintiff was more than fifteen feet from the escalator entrance/exit when panhandling).

Plaintiff alleges that he has been arrested by Metro Transit Police Department ("MTPD") for panhandling in violation of the D.C. panhandling statute. *Id*. ¶¶ 19–89. The statute prohibits panhandling in certain locations, including Metro stations. D.C. Code § 22-2302(b) ("No person may ask, beg, or solicit alms in any public transportation vehicle; or at any bus, train, or subway station or stop."). The statute does not prohibit panhandling outside the identified locations, and non-aggressive panhandling is permissible in many parts of the District of Columbia. *Id*. § 22-2302.

According to the Amended Complaint, Plaintiff has been arrested on three separate occasions. On October 21, 2016, an MTPD officer cited him for panhandling "outside of the USDA building and Smithsonian Metro station at the 12th & Independence exit." Am. Compl. ¶ 20. "At that time [Plaintiff] customarily sat in the same spot against the wall next to the stairs of the USDA building." *Id*. ¶ 21. He was holding a cardboard sign saying "Grateful for anything." *Id*. ¶ 28. On February 28, 2018, an MTPD officer cited Plaintiff for panhandling at the L'Enfant Plaza Metro station when he was "sitting down on the ground, leaning against the station entrance parapet wall on WMATA property with a dog in his company," again holding a cardboard sign with "grateful for anything" written on it. *Id*. ¶ 79. On August 22, 2019, an MTPD officer cited Plaintiff "outside of the Metro Station entrance [at] L'Enfant Plaza." *Id*. ¶¶ 83, 86–87. He was "sitting down on the ground, leaning against the station entrance parapet wall on WMATA property," again with his dog and holding a cardboard sign saying "grateful for anything." *Id*. ¶¶ 83–84. The attached Declaration of MTPD Chief Ronald A. Pavlik, Jr. confirms that all three

arrests of Plaintiff for panhandling were based on violations of the D.C. panhandling statute.  Decl. of Ronald A. Pavlik, Jr. ¶¶ 6–7 (Ex. 1) (Pavlik Decl.).[1]

Plaintiff alleges that he fears arrest or banishment from WMATA property if he panhandles again at the Smithsonian or L'Enfant Plaza Metro stations.  Am. Compl. ¶ 150.[2]

### B.    Procedural Background

Plaintiff filed this action against WMATA General Manager Paul J. Wiedefeld in October 2019.  Compl., ECF No. 1.  He originally asserted two claims based on 42 U.S.C. § 1983:  (i) that the D.C. panhandling statute violates the First Amendment as a form of content discrimination that does not pass strict scrutiny, and (ii) that WMATA has a policy and practice of applying the D.C. panhandling statute "as it relates to Metro stations and bus stops" regardless of whether persons are more than fifteen feet beyond escalator entrances, what he referred to as the "*McFarlin* zone." *Id.* ¶ 137.  That same day, Plaintiff moved for a preliminary injunction to bar WMATA "from interfering with his practice of 'panhandling' in the vicinity of WMATA station entrances and accepting donations from passersby."  Pl.'s Mot. for Prelim. Inj. 1, ECF No. 3.

In November 2020, following a hearing, the Court denied Plaintiff's motion for a preliminary injunction without prejudice.  Order, ECF No. 20.  Subsequently, the Court held a status conference where it explained that it had denied the motion because Plaintiff "failed to demonstrate his entitlement to a preliminary injunction because he has not stated his claims with sufficient clarity for the Court to be able to evaluate their likelihood of success."  Tr. of Dec. 9, 2020 Status Conference 10 (ECF No. 22).  The Court allowed Plaintiff to amend his complaint. *Id.*

---

[1] Plaintiff's date of birth, driver's license number and identification card number have been redacted from the citation records.

[2] The Amended Complaint also alleges that MTPD has arrested other persons not named as plaintiffs for panhandling.  Am. Compl. ¶¶ 90–104.

In January 2021, Plaintiff filed the Amended Complaint.  It continues to rely on 42 U.S.C. § 1983, but asserts four new claims.  The first claim alleges that, based on Defendant's policy, MTPD officers arrested Plaintiff for panhandling "outside of the *McFarlin* zones."  Am. Compl. ¶¶ 139–53.  Such an arrest, he asserts, was "in the absence of a valid panhandling statute" and in violation of his First Amendment rights.  *Id.* ¶¶ 141–45.  The first claim alleges, in the alternative, that Defendant and WMATA lack appropriate policies or procedures for enforcing the panhandling statute "as narrowed by judicial action," in deliberate indifference to the risk of constitutional violations.  *Id.* ¶¶ 146–47.  The second, third, and fourth claims of the Amended Complaint assert that WMATA's separate "permit scheme" violates the First Amendment facially and as applied because it is improperly content-based, a prior restraint on speech, and viewpoint discriminatory. *Id.* ¶¶ 155–78.

The Amended Complaint seeks a declaration that Plaintiff's arrests were unlawful.  Am. Compl., Relief Req.  It seeks injunctive relief prohibiting Defendant from enforcing the D.C. panhandling statute outside fifteen feet of Metro station escalator entrances; prohibiting Defendant from requiring a permit for panhandling outside that fifteen-foot area; and vacating the citations MTPD issued to Plaintiff.[3]  *Id.*

---

[3] Insofar as the Amended Complaint seeks only prospective injunctive relief against WMATA's General Manager, Defendant does not argue that it is barred on grounds of sovereign immunity.  Defendant lacks authority, however, to "seal[] [Plaintiff's] relevant arrest and detention and citation records and declare[] his arrests and citations a nullity."  Am. Compl. at 29 (Relief Requested ¶ H).  Those matters are for the competent District of Columbia agency.

**ARGUMENT**

### I.  Legal Standards

On a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction.  *Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218, 234 (D.D.C. 2019).  In deciding such a motion, the court considers the factual allegations of the complaint and may also consider materials outside the pleadings.  *Id.*

On a motion to dismiss under Rule 12(b)(6), the plaintiff bears the burden of showing that the complaint is legally sufficient.  *Id*.  A complaint must plead facts that, if accepted as true, would state a claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 234.  The Court "limit[s] its analysis to the four corners of the complaint, as well as any 'documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies[.]'"  *Ctr. for Biological Diversity*, 404 F. Supp. 3d. at 235 (quoting *Page v. Mancuso*, 999 F. Supp. 2d 269, 275 (D.D.C. 2013)).  A claim should be dismissed under Rule 12(b)(6) if the complaint, accepting its factual allegations as true, fails "to state a claim to relief that is plausible on its face."  *Id*. at 234 (quoting *Harris v. D.C. Water & Sewer Auth*., 791 F.3d 65, 68 (D.C. Cir. 2015), and *Iqbal*, 556 U.S. at 678).

### II.  Plaintiff's Challenge to WMATA's Permit Requirements Should Be Dismissed Under Rule 12(b)(1) for Lack of Standing

It is well-established that Article III of the Constitution limits the Court's jurisdiction to deciding "[c]ases" and "[c]ontroversies."  *E.g.*, *Comm. on Judiciary of U.S. House of Representatives v. McGahn*, 968 F.3d 755, 762 (D.C. Cir. 2020) (quoting U.S. Const. art. III, § 2) (original alteration).  "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'"

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) (original alteration); *see also Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996) ("[S]tanding … is jurisdictional."). Thus, a core element of the case-or-controversy requirement is standing to sue, which a plaintiff bears the burden of establishing. *McGahn*, 968 F.3d at 762.

The "irreducible constitutional minimum of standing" consists of three elements: (1) injury in fact; (2) causation; and (3) redressability. *Id.* (quoting *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016), and *Lujan*, 504 U.S.at 560). "[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Kareem v. Haspel*, No. 19-5328, 2021 WL 137361, at *4 (D.C. Cir. Jan. 15, 2021) (quoting *Lujan*, 504 U.S. at 561). Assuming for purposes of this motion that Plaintiff's arrests and alleged fear of future arrests are sufficient to establish an injury in fact at the pleading stage, he still fails to establish standing to challenge WMATA's permit requirements because he does not satisfy the elements of causation or redressability.

### A.      Plaintiff Fails to Demonstrate Causation

To satisfy the causation element of standing, a plaintiff must demonstrate that the alleged injury is "fairly traceable to the challenged conduct of the defendant." *McGahn*, 968 F.3d at 762. Plaintiff cannot show that his alleged injury—arising exclusively from enforcement of the D.C. panhandling statute—is traceable to WMATA's permit policy.

Claims 2, 3 and 4 of the Amended Complaint challenge WMATA's permit requirements set forth in its Use Regulations—what Plaintiff calls WMATA's "permit scheme"—as contrary to the First Amendment. Am. Compl. ¶¶ 154–82. WMATA's Use Regulations allow certain activities, including speech and performance activities, on WMATA property by permit.

6

WMATA, Regulations Concerning the Use of WMATA Property § 4 (2018), https://www.wmata.com/business/real-estate/upload/Property_Use_Regulations.pdf ("Use Regulations").  The Amended Complaint, however, does not allege any facts demonstrating that Plaintiff's claimed injury is "fairly traceable" to WMATA's permit provisions.  Rather, the Amended Complaint identifies WMATA's enforcement of the D.C. panhandling statute as the basis for his arrests and thus the cause of Plaintiff's alleged injuries.  *Id.* ¶¶ 80–81, 85–86 (alleging that MTPD officers arrested Plaintiff and issued him a citation for panhandling in violation of D.C. Code § 22-2302(b)).  The attached Declaration of MTPD Chief Pavlik confirms that Plaintiff's arrests were for violation of the panhandling statute and not for failure to obtain a permit.  Pavlik Decl. ¶¶ 6–8.

Because the Amended Complaint alleges no causal connection between WMATA's permit provisions and the injuries Plaintiff alleges, Plaintiff lacks standing to challenge those provisions.  *Sykes v. Fed. Election Comm'n*, 335 F. Supp. 2d 84, 91–92 (D.D.C. 2004) (plaintiff failed to establish causation where the statute he challenged did not cause his alleged injury).  Plaintiff's permit-related claims (Claims 2–4) should be dismissed under Rule 12(b)(1) for that reason alone.

### B.    Plaintiff Fails to Demonstrate Redressability

To satisfy the third element of standing—redressability—a plaintiff must demonstrate that the injury alleged "is likely to be redressed by a favorable judicial decision."  *McGahn*, 968 F.3d at 762; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (redressability requires a litigant to demonstrate "a likelihood that the requested relief will redress the alleged injury").  For reasons similar to those discussed above, as well as those explained below, Plaintiff's requested relief vis-à-vis WMATA's permit provisions would not redress his alleged injury.

The Amended Complaint seeks declaratory and injunctive relief that would prevent WMATA from requiring Plaintiff and other panhandlers to obtain a permit before panhandling.

7

Am. Compl., Relief Req. ¶¶ D, F, G.  WMATA does not issue permits for panhandling because WMATA does not allow panhandling at Metro stations consistent with the D.C. panhandling statute.  Pavlik Decl. ¶ 9.  A remedial order preventing WMATA from requiring permits for panhandling would not allow Plaintiff to panhandle in light of the independent operation of the statute.  *Sykes*, 335 F. Supp. 2d at 92–93 (claim challenging statute was not redressable where the statute did not cause the alleged injury and invalidation of the statute would not redress the alleged injury); *see also Exhaustless Inc. v. Fed. Aviation Admin*., 931 F.3d 1209, 1212 (D.C. Cir. 2019) ("[T]raceability and redressability, 'overlap as two sides of a causation coin.'") (quoting *Dynalantic Corp. v. Dep't of Def*., 115 F.3d 1012, 1017 (D.C. Cir. 1997)).  Plaintiff therefore lacks standing to challenge WMATA's permit requirements for the additional reason that his claims are not redressable.

* * *

Because Plaintiff lacks standing to challenge the permit provisions of WMATA's Use Regulations, Claims 2, 3 and 4 of the Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1).

### III.   Plaintiff's First Amendment Challenge to WMATA's Enforcement of the Panhandling Statute Should Be Dismissed Under Rule 12(b)(6)

Plaintiff's claim that he was arrested for panhandling in the absence of a valid statute, in violation of the First Amendment (Claim 1), fails for two independent reasons.  First, panhandling (at least as conducted by Plaintiff) is not speech protected by the First Amendment.  Second, even if such panhandling were protected speech, WMATA properly applied the D.C. panhandling statute to the parapets that surround the open-air escalators at Metro stations where Plaintiff was arrested.

A.      **Panhandling is Conduct, Not Protected Speech**

"[T]he First Amendment comes 'into play' only where 'particular conduct possesses sufficient communicative elements,' that is, when an 'intent to convey a particularized message [is] present, and in the surrounding circumstances the likelihood [is] great that the message would be understood by those who viewed it.'" *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 741 (D.C. Cir. 2016) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989), and *Spence v. Washington*, 418 U.S. 405, 410–11 (1974), respectively).  Panhandling, as conducted by Plaintiff pursuant to his allegations, is not protected speech.

Panhandling, where limited to asking passersby for money, is conduct lacking sufficient expressive content.  *E.g.*, D.C. Code § 22-2301(2) (defining panhandling as "the spoken, written, or printed word or such other act conducted for the purpose of obtaining an immediate donation of money or thing of value.").  It lacks the "particularized message" concerning "views and ideas" and "advocacy of causes" that characterize the charitable, philanthropic, and religious solicitations that the Supreme Court has held are protected by the First Amendment.  *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980) ("[C]haritable appeals for funds . . . involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment."); *see also id.* ("[S]olicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues.").

As Professor Noah Feldman has observed, "a law that bans all panhandling could be perfectly constitutional, because what's being banned is the conduct of begging, not the content of the speech."  Noah Feldman, Opinion, *Brother, Spare Me a Dime. Or Else*., Bloomberg (May 10, 2016),  https://www.bloomberg.com/opinion/articles/2016-05-10/panhandling-isn-t-always-

9

free-speech (copy attached).   Panhandling is not more than "solicit[ing] for money," unlike "[c]anvassers in [charitable appeal] contexts [who] are necessarily more than solicitors for money." *Schaumburg*, 444 U.S. at 632.

Other courts have held that panhandling is protected speech.  *E.g.*, *Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019) (citing *Schaumburg*, 444 U.S. at 632).   But those courts—erroneously—have analogized panhandling to charitable solicitations.  *Id.*   Neither the Supreme Court nor the D.C. Circuit has decided the issue.   Defendant respectfully submits the better view is that, as a simple request for money, panhandling is conduct not entitled to First Amendment protection.

## B.      *McFarlin* Does Not Foreclose WMATA's Enforcement of the D.C. Panhandling Statute as to Plaintiff

The Amended Complaint claims that MTPD arrested Plaintiff for panhandling "in the absence of a valid panhandling statute governing his conduct" and thereby violated his First Amendment right to free speech.  Am. Compl. ¶ 141.  Plaintiff contends that the D.C. panhandling statute did not apply to him because he alleges he was outside the fifteen-foot area at the entrance/exit of the escalator, which he refers to as the "*McFarlin* zones."  *Id.* ¶ 142.  Contrary to Plaintiff's contention, the D.C. Court of Appeals in *McFarlin* did not foreclose enforcement of the panhandling statute at the parapets surrounding the open-air escalators at Metro stations.   The Amended Complaint alleges that Plaintiff was panhandling in those areas—which are within fifteen feet of the escalators—when he was arrested.

*McFarlin* was a criminal case involving three individuals convicted for panhandling at the top of a Metro station escalator in violation of section 3(b) of the D.C. panhandling statute.   The first (Mr. Williams) was "at the very top of the escalator on which people were exiting from the subway" and within fifteen feet of the escalator entrance.  681 A.2d at 447.  The others (Messrs.

McFarlin and Taylor) were also at the top of the escalator, but the evidence was unclear as to their distance from the escalator entrance.  *Id.* at 451.  All three individuals appealed their convictions and argued that the panhandling statute violated the First Amendment.  *Id.* at 445.

On appeal, the D.C. Court of Appeals construed section 3(b) of the statute, "*insofar as relevant [t]here,*" "as prohibiting all panhandling (whether 'aggressive' or nonaggressive) within fifteen feet of the escalator entrance."  *Id.* at 448 (emphasis added).  The court recognized that the statute does not define "subway station or stop" and looked to "WMATA's particular needs and concerns," as reflected in its Use Regulations, as a basis for a construction "that avoids possible constitutional difficulties."  *Id.*  WMATA's Use Regulations, in turn, provided that "[a]ll free speech activities are to take place at a distance greater than fifteen (15) feet from any escalator, stairwell, fare gate, mezzanine gate, kiosk, or fare card machine."  *Id.* at 446 (quoting Use Regulations § 100.10 (1991)[4]).  Both that regulation and the panhandling statute itself, the court observed, were designed to restrict certain activity (including speech activity) at Metro stations for "public safety reasons."  *Id.* at 448.  The court concluded that the fifteen-foot rule of the Use Regulations "provides a reasonable gloss on the meaning of 'at any ... subway station or stop'" and, applying principles of constitutional avoidance, interpreted section 3(b) of the panhandling statute in light of that rule to resolve the "relevant" dispute in that case.  *Id.*

Because the D.C. Court of Appeals found such a construction of the statute constitutionally permissible and sufficient to decide the case before it, the court did not need to address the statute's full scope and whether it might also constitutionally cover other scenarios like the one presented in this case.  *McFarlin*'s statement that the statute covers panhandling within fifteen feet of an

---

[4] WMATA has since amended its Use Regulations, and section 4.1.1 is the current provision addressing the location of speech activities.

escalator entrance therefore should not be read to control the different circumstances presented here. *In re Grand Jury Subpoena*, 912 F.3d 623, 630–31 (D.C. Cir. 2019) ("'[G]eneral language in judicial opinions' should be read 'as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering.'") (quoting *Illinois v. Lidster*, 540 U.S. 419, 424 (2004)); *see also id.* at 631 (Supreme Court interpretation of statute in one context did not establish rule for statute's application in the different context presented by case before D.C. Circuit, as case before D.C. Circuit presented "a situation where the [Supreme] Court's earlier statements, '[t]hough seemingly comprehensive,' do 'not provide a clear answer in th[e] case'") (quoting *Republic of Austria v. Altmann*, 541 U.S. 677, 694 (2004)). Indeed, WMATA was not a party to *McFarlin* (a criminal case between the defendants and the District of Columbia) and thus had no opportunity to weigh in on how the fifteen-foot rule it established in its Use Regulations should impact construction of the statute in other scenarios, and how public safety considerations would inform such constructions.

As the Amended Complaint reflects, the same public safety purpose recognized in *McFarlin* supports application of the statute to panhandling within fifteen feet of an escalator, not just from the escalator entrance. Enforcement of the panhandling statute within the entire fifteen-foot area surrounding the escalator reasonably promotes public safety at Metro stations as it protects "the safe and orderly flow of pedestrian traffic free from verbal and physical confrontations." Am. Compl. ¶ 106 (quoting Decl. of Chief Pavlik ¶ 9, ECF No. 10-1). And as the graphics in the Amended Complaint show, some Metro stations feature open-air escalators, *id.*, Figures 1 and 2 (pages 3 and 4), which present a risk of harm if persons or property (including objects placed on the parapet like in Figure 6 on page 5) fall over the parapet that surrounds those

escalators and onto persons on the escalators and/or the escalators themselves.  Indeed, the plain language of the Use Regulations does not limit the fifteen-foot rule to escalator entrances; it prohibits activity unless it is "fifteen (15) feet outside of and away from any escalator" (or other station feature identified in the regulation).  Use Regulations § 4.1.1.[5]

Enforcing the panhandling statute where Plaintiff alleges he conducted his panhandling—within fifteen feet of escalators—thus should not offend First Amendment principles any more than its application to the conduct in *McFarlin*.  As the D.C. Court of Appeals emphasized with limiting language ("insofar as relevant here," *McFarlin*, 681 A.2d at 448), it simply did not have occasion to address a circumstance like this case where the conduct occurs within fifteen feet of an escalator but more than fifteen feet from the entrance.  *McFarlin* therefore does not foreclose WMATA from enforcing the statute within fifteen feet of its escalators where Plaintiff was panhandling; *McFarlin*'s logic supports such enforcement.

* * *

Plaintiff's First Amendment claim fails as a matter of law.  Claim 1 of the Amended Complaint should be dismissed under Rule 12(b)(6).  *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 234.

## CONCLUSION

For the foregoing reasons, this action should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Dated: February 24, 2021                          Respectfully submitted,

                                                  /s/ Anthony T. Pierce
                                                  Anthony T. Pierce

---

[5] The earlier version of the Use Regulations quoted in *McFarlin* similarly phrased the rule as "fifteen (15) feet from any escalator … "  *McFarlin*, 681 A.2d at 446 (quoting Use Regulations § 100.10 (1991)).

D.C. Bar. No. 415263
Caroline L. Wolverton
  D.C. No. Bar 496433
Jason E. Gangwer
  D.C. Bar. No. 888314556
AKIN GUMP STRAUSS HAUER & FELD, LLP
2001 K Street, N.W.
Washington, D.C. 20006
Phone: (202) 887-4000
Fax: (202) 887-4288
apierce@akingump.com

Rex S. Heinke
  D.C. Bar No. CA00080
CALIFORNIA APPELLATE LAW GROUP LLP
811 Wilshire Blvd.
17th Floor
Los Angeles, CA 90017
Phone: (213) 878-0404
rex.heinke@calapplaw.com

*Attorneys for Defendant*

14