## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN BURKE,** | |
| Plaintiff, | |
| v. | **Civil Action No.:** 19-3145-KBJ |
| **PAUL J. WIEDEFELD,** | |
| Defendant. | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Mr. Burke filed his Amended Complaint [23] ("Am. Compl.") against defendant because WMATA violated his First Amendment rights by arresting him for panhandling in the public forum areas of certain Metro stations and ordering him to leave the area. Mr. Burke's complaint alleged that panhandling was banned in Metro stations, or, that "[a]lternatively, even if you can panhandle in a public forum area at a Metro station, you cannot do it without a permit issued by WMATA." Am. Compl. ¶¶ 14-15. Mr. Burke further alleged that "[he] neither sought nor received a permit from WMATA before panhandling." *Id.* at ¶ 8.

Mr. Burke filed claims challenging both the enforcement of the District's panhandling statute against him in areas where the District of Columbia Court of Appeals has construed it not to apply, Claim 1, and the permit requirement. Claims 2-4. Am. Compl.

Defendant moved to dismiss Claims 1 and Claims 2-4 on separate grounds. Defendant's Motion to Dismiss ("Def.'s Mot."). [23].

Defendant moves to dismiss Claim 1 under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Defendant moves to dismiss Claims 2-4 under Fed. R. Civ. P. 12(b)(1) for lack of standing. Defendant does not move in the alternative to dismiss Claims 2-4 under Fed. R. Civ. P. 12(b)(6).

Defendant's motion to dismiss Claim 1 under Rule 12(b)(6) should be denied because defendant failed to carry its burden of establishing that the complaint fails to plausibly state a claim on Claim 1. *Cohen v. Bd. of Trs. of the Univ. of the D.C.*, 819 F.3d 476 (2016). The defendant's arguments fail because they attack not the sufficiency of the complaint but the merits of the claim. *See Brown*, 390 F. Supp. 3d at 123 (courts typically do not reach the merits of a First Amendment challenge at the motion-to-dismiss stage).

Defendant's motion to dismiss Claims 2-4 under Rule 12(b)(1) on standing grounds should also be denied because Mr. Burke's arrest and banishment order and current avoidance of the Metro stations for panhandling in a public forum area is fairly traceable to both defendant's "no-panhandling" policy and its permit scheme because they are interdependent causes not mutually exclusive causes. *See e.g.*, *Attias v. CareFirst, Inc.*, 431 U.S. App. D.C. 273, 278, 865 F.3d 620, 625, 629 (2017)(although the hacker was the most immediate cause of plaintiffs' injuries, injury was ultimately traceable to defendant's alleged failure to secure plaintiffs' data).

WMATA both locked and barred the door to panhandling at Metro stations by enforcing an invalid statute and requiring a permit for even a single panhandler. Just as it is impossible to apportion cause as to which is keeping a locked and barred door shut, the lock or the bar, so it is impossible to allocate cause between enforcing the invalid statute and imposing a permit scheme. But one thing is sure – to open the door you must both unlock the lock and remove the bar.

To open the door to panhandling at Metro stations outside the *McFarlin* zones (defined below) Mr. Burke needs relief from both the illegal enforcement of the panhandling statute and relief from the permit requirement. Article III standing does not require that the defendant be the most immediate cause, or even a proximate cause, of the plaintiffs' injuries; it requires only that those injuries be "fairly traceable" to the defendant. *Attias v. CareFirst, Inc.*, 431 U.S. App. D.C. 273, 282, 865 F.3d 620, 629 (2017). *Attias* dealt with intertwined, interdependent causes where

there was more than one actor; but the same principle applies when there is one actor but more than one cause. At the end of the analysis the question is, are the plaintiff's injuries fairly traceable to the defendant's "actions" and the answer here is yes. *Id.*

Moreover, a very practical reason for denying Defendant's motion to dismiss Claims 2-4 is on standing grounds is that even if the Court were to enter judgment for Mr. Burke on Claim 1 and to declare that arresting Mr. Burke for panhandling violated his First Amendment rights or enjoin defendant from enforcing the panhandling statute against Mr. Burke, Mr. Burke would still be subject to an unconstitutional prior restraint on his First Amendment rights even if WMATA were willing to grant Mr. Burke a permit, and he would still be subject to arrest, prosecution and banishment if he attempted to panhandle without a permit. Amended Complaint 121.[1] The injury Mr. Burke complains of in Claims 2-4 is not WMATA's failure to grant a permit but the requirement of a permit in the first place. If Mr. Burke had filed Claim 1 and then waited for a judgment in his favor on that claim before filing Claims 2-4 he would likely find Claims 2-4 barred by the claim-splitting rules. *Natural Res. Def. Council v. EPA*, 513 F.3d 257, 261 (D.C. Cir. 2008) (claim preclusion bars relitigation of claim, including any arguments and theories that should have been raised in earlier suit on claim). Moreover it would be an inefficient use of the Court's resources to require two separate suits as Defendant effectively demands.

Also, Mr. Burke demonstrates at least that enforcing the law against him through the permit requirement will remain a "special priority' for the government" if Mr. Burke gains the relief

---

[1] WMATA can effectively punish failure to comply with the Use Regulations including the permit requirement and violations of the terms of a permit by banning people from WMATA property and enforcing the ban through the District's criminal trespass statute. See D.C. Code § 22–3302 (Unlawful entry on property); Use Regulations, ¶¶ 3.2.12 and 3.2.13.

Am. Compl. ¶ 121.

he seeks against enforcement of the panhandling statute because of WMATA's system-wide no-panhandling policy. Am. Compl. ¶ 105-107; *see Ord*, 587 F.3d at 1141.

As a practical matter Mr. Burke needs relief from both the illegal enforcement of the panhandling statute and the permit scheme to fully redress his injuries. The redressability requirement is satisfied if a favorable decision would relieve or reduce a discrete injury to the plaintiff. It is not necessary that a favorable decision would relieve every injury. *Larson v. Valente*, 456 U.S. 228, 243 n.15, 102 S. Ct. 1673, 72 L. Ed. 2d 33 (1982) (plaintiff not required to show that favorable decision would definitely result in its receiving religious organization exemption from registration and reporting requirements of state charitable solicitations act; redressability requirement satisfied because favorable decision would make it easier to secure exemption); 15 Moore's Federal Practice - Civil § 101.42 (2021). The existence of multiple causes of an injury does not defeat redressability. 15 Moore's Federal Practice - Civil § 101.42 (2021).

Finally, Chief Pavlik's declaration does not conclusively establish that Mr. Burke's injuries are exclusively traceable to the illegal enforcement of the panhandling statute to the exclusion of the permit scheme. Like the MPD in *Ord*, Chief Pavlik enforced a statute against Mr. Burke knowing that it did not apply to him in the *McFarlin* zones because the District of Columbia Court of Appeals had narrowly construed the term "at a [Metro station]" to mean within the *McFarlin* zones at Metro stations. *Ord v. District of Columbia*, 587 F.3d at 1141 (2009). And then through his enforcement of WMATA's policy Chief Pavlik blocked Mr. Burke's access to the courts to challenge the enforcement by refusing to refer the arrests to the OAG and to get Mr. Burke a court date as both the legend on the citation (Am. Compl. ¶ 88) and D.C. Code § 23-584(b)(1) and (b)(2) require. Am. Compl. ¶ 88; Burke declaration, ECF Document 3-1, ¶¶ 37-52 (first citation October 21, 2016; Mr. Burke tried but unable to get court date; ticket voided); *Id.* at ¶¶ 65-67 (Mr. Burke tried but unable to get court date for August 22, 2019 arrest).

Where, as here, the jurisdictional facts are too intertwined with the merits to permit the determination to be made independently, and as here are disputed, the court should leave the jurisdictional determination to summary judgment or trial so Plaintiff can have the benefit of discovery. *Unite Here Local 25 v. Madison Ownership, LLC*, 850 F. Supp. 2d 219, 229-30 (D.D.C. 2012).

## STANDARD OF REVIEW

### Defendant's motion to dismiss Claim 1 based on Fed. R. Civ. P. 12(b)(6)

The defendant in a motion to dismiss based on Fed. R. Civ. P. 12(b)(6) bears the burden of establishing that the complaint fails to state a claim. *Cohen,* 819 F.3d at 481.

The burden never shifts to the plaintiff regardless of the sufficiency of the plaintiff's opposition where, as here, the complaint itself adequately states a plausible claim for relief. *Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 892 F.3d 332, 344-45 (D.C. Cir. 2018).

The issue in a 12(b)(6) motion is the sufficiency of the complaint; the plaintiff does not have to establish success on the merits. *Skinner v. Switzer*, 562 U.S. 521, 529-30, 131 S. Ct. 1289, 1296 (2011). A plaintiff's complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to survive a motion to dismiss. *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (complaint must give defendants notice of the claims and the factual basis on which they rest grounds upon which they rest, but not the legal theory supporting the claim asserted) (quoting FRCP 8(a)(2)); *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).

The Supreme Court's holding in *Leatherman* that federal courts may not apply a "'heightened pleading standard' — more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure — in civil rights cases alleging municipal liability under

Page 5

... 42 U.S.C. § 1983" has survived intact the Court's later civil pleading decisions in *Iqbal* and *Twombly*, which require the pleader to allege only a "plausible" claim. *White v. City of Chi.*, 829 F.3d 837, 843-44 (7th Cir. 2016) *relying on Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *Odom v. District of Columbia, 248 F. Supp. 3d 260, 267 (D.D.C. 2017)*.

At the motion to dismiss stage the court must treat the complaint's factual allegations as true and grant plaintiff the benefit of all inferences that can be derived from the facts alleged. *Atherton*, 567 F.3d at 677; *Brown v. Sessoms*, 774 F.3d 1016, 1020 (D.C. Cir. 2014); *Patterson v. United States*, 999 F. Supp. 2d 300, 316 (D.D.C. 2013). Moreover, courts may employ judicial notice, *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997), so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint. *Clatterbrook v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). Among other things, a court may take judicial notice of court records from other cases, though the facts alleged therein are not conclusive. *Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017).

### Defendant's motion to dismiss Claim 2 based on Fed. R. Civ. P. 12(b)(1)

Dismissal of the case on the basis of Fed. R. Civ. P. 12(b)(1) "may be improper before the plaintiff has had a chance to discover the facts necessary to establish jurisdiction." *Unite Here Local 25 v. Madison Ownership, LLC*, 850 F. Supp. 2d 219, 229-30 (D.D.C. 2012).

### INTRODUCTION

Mr. Burke can sue Mr. Wiedefeld in his official capacity as General Manager of WMATA for injunctive and declaratory relief under § 1983. *Hedgepeth v. Wash. Metro. Area Transit Auth.*, 386 F.3d 1148 , 1152 n.3 (2004). Both the injuries Mr. Burke has suffered to date – arrest and being ordered from WMATA property, the genuine and imminent risk of prosecution if he

panhandles at Metro stations or the need to avoid those places to avoid prosecution and the claim for expungement of his arrest record and a judicial declaration deeming his unlawful arrest a nullity establish standing and a live controversy for both claims. *Hedgepeth v. Wash. Metro. Area Transit Auth.*, 386 F.3d 1148, 1152 (2004); *Ord v. District of Columbia*, 587 F.3d 1136, 1145 (2009). Mr. Burke has been been "singled out [and] uniquely targeted by the . . . government for prosecution." *Ord,* 587 F.3d at 1141.

WMATA effectively concedes the need for judicial action on the claim for expunement and a declaration that the arrests and charges were nullities by conceding that "Defendant lacks authority ... to "seal[] [Plaintiff's] relevant arrest and detention and citation records and declare[] his arrests and citations a nullity." Def.'s Mot. p. 10, n. 3 (all page citations are to the ECF page numbers).

## STATEMENT OF FACTS

WMATA has locked *and* barred the door to panhandling at Mr. Burke's favorite locations around two Metro stations. It has its own system-wide no-panhandling policy. Am. Compl. ¶ 105. It enforces against Mr. Burke an invalid location-based panhandling statute that does not apply to the areas where he panhandles, Am. Compl. ¶ 115-119, or it simply arrests him for the generic offense of panhandling. Am. Compl. ¶ 88 (citation for "panhandling." And, at the same time, WMATA in 2018 promulgated a set of Use Regulations that require Mr. Burke to get a permit before panhandling on any WMATA property. Am. Compl. ¶ 15, ¶¶ 115 to 138. The allegations in Claim 2 provide one illustration of the intertwining of WMATA's enforcement of the panhandling statute and the permit scheme: WMATA's general system-wide no-panhandling policy converts the permit scheme into a content-based prior restraint on free speech that is unconstitutional facially and as applied. Am. Compl. ¶ 154 to 162.

It appears that WMATA arrested Mr. Burke in the last arrest for its own "no-panhandling" policy or its Use Regulations. The citation the Metro Transit Police arrested Mr. Burke for panhandling and issued him a citation for panhandling without citing to any statute at all in the citation. Am. Compl. ¶ 88.

Moreover, on each arrest the MPD ordered Mr. Burke to leave the area, Am. Compl. ¶ 36, 48, 51, 82, 89 (on foot rather than by Metro train, Am. Compl. ¶ 52-54), which is consistent with a violation of the WMATA Use Regulations rather than the District's panhandling statute.

Finally, WMATA blocks Mr. Burke's access to the courthouse to challenge the constitutionally of the arrests because Metro Transit Police would not help him to get court dates as it was required to by both the legend on the citation (Am. Compl. ¶ 88) and D.C. Code § 23-584(b)(1) and (b)(2). Am. Compl. ¶ 88; Burke declaration, ECF Document 3-1, ¶¶ 37-52 (first citation October 21, 2016; Mr. Burke tried but unable to get court date; ticket voided); *Id.* at ¶¶ 65-67 (Mr. Burke tried but unable to get court date for August 22, 2019 arrest).

Mr. Burke's Amended Complaint alleges both the permit scheme and WMATA's interpretation of the panhandling statute as the cause of his injuries:



"[You] cannot panhandle:

**Figure 1 Panhandlers John Burke and service dog Bertha, panhandling, usually at L'Enfant Plaza or Smithsonian Metro station**

Alternatively, even if you can panhandle in a public forum area at a Metro station, you cannot do it without a permit issued by WMATA."

Am. Compl. ¶¶ 14-15.

Defendant's activities are the cause of Mr. Burke's injuries and trying to claim that his injuries are fairly traceable to only one component of Defendant's activities is an artificial analysis not supported by the law or the facts. *Attias v. CareFirst, Inc.*, 431 U.S. App. D.C. 273, 278, 865 F.3d 620, 625, 629 (2017)(although the hacker was the most immediate cause of plaintiffs' injuries, injury was ultimately traceable to defendant's alleged failure to secure plaintiffs' data). Here, both enforcing the invalid panhandling statute and the permit scheme serve WMATA's system-wide no-panhandling policy and both are the cause of his injuries.

Metro Transit Police ("MTPD") officers have arrested Mr. Burke for panhandling at two different WMATA Metro stations on three separate dates since October 21, 2016[2]:

| Date of arrest | Metro station | Allegations in Am. Compl. | Statute cited in citation |
|---|---|---|---|
| October 21, 2016 | Smithsonian Metro Station | 32 to 61 | Appears to be aggressive panhandling , ¶ 42 |
| February 28, 2018 | L'Enfant Plaza Metro Station | 85 to 89 | |
| August 22, 2019 | L'Enfant Plaza Metro Station | 93 to 97 | None, ¶ 88 |

On each occasion the Metro Transit Police officers wrote Mr. Burke a "post and forfeit" citation and released him from custody. A "post and forfeit" citation requires the person arrested to pay a small fine or to request a court date and to face a criminal prosecution as one would for any misdemeanor charge. See D.C. Code § 23-584.

The citation lists the most recent arrest as "panhandling" without any citation to the District's panhandling statute or any other statute. Am. Compl. ¶ 88. To be sure, the complaint

---

[2] Defendant contends that the current Use Regulations became effective as of November, 2018.

alleges that "[t]he MTP Officer issued Mr. Burke a Metropolitan Transit Police violation citation for panhandling in violation of D.C. Code § 22-2302(b)." Am. Compl. ¶ 86. But, the citation itself, also reproduced in the complaint, *Id.* at 88, states "panhandling" as the cause of arrest without any citation to the District's panhandling statute.

Mr. Burke alleged "WMATA does not allow panhandling on its property at Metrorail stations," and Mr. Burke also alleged that "it is the official policy of WMATA to enforce the D.C. panhandling statute as written, including in Metrorail stations." Am. Compl. ¶¶ 105, 107 (describing system-wide no-panhandling policy).

The Chief of Metro Transit Police Department ("MTPD") conceded in his sworn declaration [ECF 10-1] submitted by defendant Mr. Wiedefeld in opposition to Mr. Burke's motion for preliminary injunction that, "Consistent with D.C. law, WMATA does not allow panhandling on its property at Metrorail stations." Am. Compl. ¶ 106. Obviously Chief Pavlik means that WMATA's system-wide no-panhandling policy is consistent with the District's panhandling statute, but by referring to a system-wide policy, construing the statement in Mr. Burke's favor, *Clatterbrook*, 708 F.3d at 557 (courts may employ judicial notice so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint), the sense is WMATA has a system-wide no-panhandling policy that is independent of the statute. Defendant has adopted the Chief's statement of WMATA's "no-panhandling" policy as his own by relying on the affidavit in his previous motion. *See Taylor v. Blakey*, 490 F.3d 965, 973 (D.C. Cir. 2007), *rev'd on other grounds*, 553 U.S. 880 (2008) ("Taylor's statement in his motion for discovery, however, may be treated as an 'admission[] on file")

Also, according to the Chief, it is the official policy of WMATA to enforce the D.C. panhandling statute as written, including in Metrorail stations. D.C. Code § 22-2302(b). Am. Compl. ¶ 107.

**Defendant concedes that the Metro Transit Police encounters with Mr. Burke constituted arrests.**

Defendant concedes that the Metro Transit Police encounters with Mr. Burke constituted arrests. Def.'s Mot., p. 7 ("present a viable challenge to his arrests for panhandling at Metro stations;" "Plaintiff was arrested for violating the panhandling statute, not for failing to have a permit"). Moreover, on each arrest the Metro Transit Police issued Mr. Burke a citation pursuant to D.C. Code § 23-584 which provides in relevant part: "In lieu of taking a person into custody, a law enforcement officer may issue a field arrest form to a person whom he or she has arrested without a warrant if the person ..." D.C. Code § 23-584(a). *See* Am. Compl. ¶ 88 (citation issued Mr. Burke for 8/22/2019 arrest).

I.   **Defendant's Motion to Dismiss Claim 1 of the Amended Complaint Should Be Denied Because Claim 1 States a Plausible Claim under the First Amendment.**

In Claim 1 Mr. Burke alleged that arresting him, or ordering him to leave the public forum areas he panhandles in the absence of a valid statute, violated his First Amendment rights. Am. Compl. ¶¶ 141, 142, 151.

Defendant fails to carry its burden of establishing that the complaint fails to state a plausible claim on Claim 1, *Cohen v. Bd. of Trs. of the Univ. of the D.C.*, 819 F.3d 476 (2016), because Defendant advances only arguments which attack the merits of Mr. Burke's constitutional challenge rather than the sufficiency of Mr. Burke's complaint. *Brown*, 390 F. Supp. 3d at 117, 123 (courts typically do not reach the merits of a First Amendment challenge at the motion-to-dismiss stage).

Defendant does not challenge any other aspects of Mr. Burke's Claim 1 and so Defendant waived those challenges.

### A. Mr. Burke's Allegations and the Panhandling in a Metro Station Statute.

Mr. Burke alleged in the Amended Complaint that Metro Transit Police (sometimes "MTPD") officers have arrested him for panhandling at two different WMATA Metro stations on three separate occasions since October 21, 2016[3]:

| Date of arrest | Metro station | Allegations in Am. Compl. | Statute cited in citation |
|---|---|---|---|
| October 21, 2016 | Smithsonian Metro Station | 32 to 61 | Appears to be aggressive panhandling , based on statement of Sgt. Miller, Am. Compl. ¶ ¶ 42 |
| February 28, 2018 | L'Enfant Plaza Metro Station | 85 to 89 | |
| August 22, 2019 | L'Enfant Plaza Metro Station | 93 to 97 | None, ¶ 88 (image of citation) |

Mr. Burke alleged that his panhandling activities are expressions of free speech protected by the First Amendment to the United States Constitution. Am. Compl. ¶ 140. Mr. Burke also alleged that the areas where he panhandles are public forums. *Id.* at ¶¶ 16 to 18.

Mr. Burke further alleged that arresting and detaining him for panhandling in the absence of a valid panhandling statute governing his conduct violated his First Amendment rights, ¶ 141.

Mr. Burke also alleged that arresting him for panhandling in violation of Section 22-2302(b) of the District's panhandling statute when he was panhandling at a Metro Station outside of the "*McFarlin* zones" violated his First Amendment rights. ¶ 142. The basis of this allegation is

---

[3] Defendant contends that the current Use Regulations became effective as of November, 2018.

Mr. Burke's allegations that because the District of Columbia Court of Appeals narrowly construed Section 22-2302(b) of the District's panhandling statute to avoid Constitutional infirmities in the statute as enacted, the statute now applies only to areas at Metro stations within fifteen feet of the entrances/ exits of escalators. *McFarlin v. District of Columbia*, 681 A.2d 440, 448 (D.C. 1996).

The relevant text of D.C. Code § 22-2302(b) provides that: "No person may ask, beg, or solicit alms ... at any bus, train, or subway station or stop." The District of Columbia Court of Appeals narrowly construed the statutory phrase "subway station or stop" as meaning areas within fifteen feet of the escalator entrance or exit at Metro stations (the "*McFarlin* zones") to avoid having to address Constitutional infirmities in the statute were the phrase "subway station or stop" meant to include all areas encompassed by a Metro station. *McFarlin v. District of Columbia*, 681 A.2d 440, 448 (D.C. 1996). Therefore, as construed by the District of Columbia Court of Appeals in McFarlin, D.C. Code § 22-2302(b) prohibits only panhandling (whether "aggressive" or nonaggressive) in Metro stations within fifteen feet of the escalator entrance (the *McFarlin* Zone"). Thus, conversely, as construed by the District of Columbia Court of Appeals in *McFarlin*, D.C. Code § 22-2302(b) does not apply anywhere else in a Metro station. So, as construed by the District of Columbia Court of Appeals, D.C. Code § 22-2302(b) does not apply at Metro stations outside the *McFarlin* Zones. Am. Compl. ¶ 111-113.

**B. Defendant's Two Arguments for Dismissing Mr. Burke's Claim 1 Fail because They Address Merits Issues not the Sufficiency of the Amended Complaint.**

Defendant advances two arguments for dismissing Mr. Burke's Claim 1: First, Mr. Burke's panhandling is not speech protected by the First Amendment; and second, even if such panhandling were protected speech, WMATA properly applied the D.C. panhandling statute to the parapets that surround the open-air escalators at Metro stations where Plaintiff was arrested. Def.'s Mot. at 14.

As authority for the first reason defendant relies on an opinion piece by Professor Noah Feldman has observed, "a law that bans all panhandling could be perfectly constitutional, because what's being banned is the conduct of begging, not the content of the speech." *Id.* 15-16.

Defendant argues *McFarlin*'s narrowing construction does not apply to parapets even if the parapets fall outside the *McFarlin* zones because parapets present their own safety concerns. Def.'s Mot. p. 16. Not so. The *McFarlin* Court narrowly construed the scope of "subway station" to restrict the scope of the statute to what it considered "non-public forum" areas to avoid having to apply the more stringent standard of First Amendment review applicable in public forum area. *McFarlin*, 681 A.2d at 448 ("So interpreted, the statute does not necessitate the heightened First Amendment scrutiny applicable to public fora."). So the rationale of the opinion covers the areas where Mr. Burke panhandles because they are in public fora.

But, regardless of the soundness of WMATA's arguments, Defendant's arguments are not viable at the motion-to-dismiss stage of this case, because they attack the merits of Mr. Burke's constitutional challenge rather than the sufficiency of Mr. Burke's complaint. *Brown v. Gov't of the D.C.*, 390 F. Supp. 3d 114, 117, 123 (D.D.C. 2019) (courts typically do not reach the merits of a First Amendment challenge at the motion-to-dismiss stage); *Green v. United States DOJ*, 392 F. Supp. 3d 68, 80 (D.D.C. 2019)("A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.") (*citing Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). The issue at the motion to dismiss stage is not whether the plaintiff will ultimately prevail but whether the plaintiff has adequately stated a claim. *Stokes v. Cross*, 327 F.3d 1210, 1215 (2003).

**C. Mr. Burke Plausibly Alleged the Elements of a First Amendment Claim so Defendant's Motion to Dismiss Claim 1 Should Be Denied.**

Mr. Burke plausibly alleged the Elements of a First Amendment claim so Defendant's motion to dismiss Claim 1 should be denied.

Courts generally approach First Amendment challenges to statutes and regulations and governmental conduct by (1) "determining whether the First Amendment protects the speech at issue"; (2) "identifying the nature of the forum"; and (3) "assessing whether the [government's] justifications for restricting [the] speech satisfy the requisite standard." *Brown*, 390 F. Supp. 3d at 123. Courts typically do not reach the merits of a First Amendment challenge at the motion-to-dismiss stage. *Id.*

Mr. Burke plausibly alleged that Metro Transit Police's arrests of Mr. Burke violated his First Amendment rights whether Metro Transit Police arrested him pursuant to the District's panhandling statute or WMATA's system-wide ban on panhandling. Mr. Burke alleged that "[p]anhandling is expressive conduct that is protected [First] Amendment activity." *See Brown* at 124. Even if, unlike the District in *Brown*, Defendant does not concede that panhandling is protected speech, Mr. Burke's allegation remains plausible because of the great weight of authority supporting the allegation.

The Supreme Court holds that solicitation constitutes protected expression under the First Amendment. *See e.g., Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 677-78, (1992) (*citing United States v. Kokinda*, 497 U.S. 720, 725 (1990). Solicitation "is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues," so that "without solicitation the flow of such information and advocacy would likely cease." *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980).

And virtually all Courts applying these principles to panhandling agree that panhandling is a type of solicitation that is First Amendment protected speech. *See, e.g., Norton v. City of Springfield*, 806 F.3d 411, 411-13 (7th Cir. 2015); *Brown*, 390 F. Supp. 3d at 124 (plausible that "[p]anhandling is expressive conduct that is protected [First] Amendment activity").

As to the nature of the forum, Mr. Burke alleged that he was panhandling in a public forum on all three occasions. Am. Compl. ¶¶ 16-18.Defendant does not dispute this in its motion to dismiss Claim 1.

Mr. Burke's allegations of fact must be accepted as true at the motion-to-dismiss stage, and his contentions regarding the character of the fora are not clearly precluded as a matter of law such that the complaint's "public forum" assertions cannot support a plausible claim upon which relief can be granted, as defendant appears to acknowledge by not challenging them. *Brown*, 390 F. Supp. 3d 125.

Moreover, arresting Mr. Burke and forcing him to leave the area in the absence of a valid statute violates Mr. Burke's First Amendment rights. *Pindak v. Dart*, 125 F. Supp. 3d 720, 725-26 (N.D. Ill. 2015). In *Pindak* private security officers and Cook County Deputy Sheriffs interfered with plaintiffs' First Amendment rights to panhandle in Daley Plaza by barring them from panhandling on Daley Plaza and telling them that panhandling is prohibited in the Plaza in the absence of a statute prohibiting panhandling in the Plaza. *Id.* at 725-26 and 727. The District Court granted summary judgment to plaintiffs on their claim that interfering with their right to panhandle in the Plaza in the absence of a valid statute established a predicate constitutional violation. *Id.* at 727, 751 (granting summary judgment against the officers in their individual capacities). Alternatively, based on the allegations in the complaint, WMATA has so far departed from the District's panhandling statute and the District of Columbia Court of Appeal's construction of the statute that it has adopted the statute as its own, *Cooper v. Dillon*, 403 F.3d 1208, 1221-22 (11th

Cir. 2005)( alternative holding in Cooper for municipal liability was that Sheriff Cooper was a policy maker who chose to enforce the state statute), and the statute is unconstitutional as a content based regulation of speech in a public forum. *See, e.g., Norton v. City of Springfield*, 806 F.3d 411, 411-13 (7th Cir. 2015); *Brown*, 390 F. Supp. 3d at 124.

Mr. Burke has sufficiently alleged the absence of a valid statue either because the Metro Transit Police were not acting pursuant to a statute authorizing their conduct because there was no statute, just a system-wide no-panhandling policy, Am. Compl. ¶ 105-107, or because Metro Transit Police relied on 22-2302(b) and it does not apply to the areas outside the *McFarlin* zones where Mr. Burke was panhandling. Am. Compl. ¶¶ 141 -142.

This is because as construed by the District of Columbia Court of Appeals D.C. Code § 22-2302(b) simply does not apply outside the *McFarlin* zones. Both the District of Columbia Court of Appeals and federal Courts have the power to declare statutes Unconstitutional. A declaration that a statute is unconstitutional is binding on all state actors with the power to enforce the statute even if the actor were not a party to the case. *E.g., Cooper v. Aaron*, 358 U.S. 1, 17–18 (1958)("When a state statute has been ruled unconstitutional, state actors have an obligation to desist from enforcing that statute.").

Moreover, both the District of Columbia Court of Appeals and federal Courts have the power to construe statutes narrowly to avoid having to declare them unconstitutional because of First Amendment issues. *See e.g., McFarlin; Boos v. Barry*, 485 U.S. 312, 331 (1988). The *Cooper* rule obviously applies in this context as well or the judgments of courts regarding criminal statutes of general application would be meaningless.

In this case even Defendant and Chief Pavlik do not dispute that the *McFarlin* Court's decision binds the District and the MPD. It thus binds Metro Transit Police as well. By virtue of its foundational Compact ("WMATA Compact"), the police powers of the Metro Transit Police in

Page 17

the District are derivative of the police powers of the MPD, D.C. Code § 9–1107.01, § 76(b) or at least no greater than the MPD's.[1] *Hall v. Wash. Metro. Area Transit Auth.*, 468 A.2d 970, 971 (D.C. 1983). As it applies to the District, the WMATA Compact provides that "a member of the Metro Transit Police shall have the same powers, including the power of arrest, and shall be subject to the same limitations, including regulatory limitations, in the performance of his duties as a member of the [MPD]." WMATA Compact § 76(b).

If the judgment in *McFarlin* limits the District with respect to the MPD's police powers under D.C. Code § 22-2302(b), its power to make arrests pursuant to D.C. Code § 22-2302(b), it also limits WMATA. WMATA Compact § 76(b).

Enforcing the panhandling statute against Mr. Burke knowing that as narrowed it does not apply to the areas where he panhandles is a violation of his First Amendment rights. *Pindark*; see *Ord,* 587 F.3d at 1145 (MPD officers violated plaintiff's Fourth Amendment rights by swearing out a warrant based on a violation of a statute knowing that the plaintiff arrestee was exempt from the criminal statute).

Chief Pavlik's contention that he is obligated by law to enforce Section 22-2302(b) "as written" by virtue of D.C. Code § 5–115.03 fails for several reasons. Section 5–115.03 provides in relevant part: "If any member of the police force shall neglect making any arrest for an offense against the laws of the United States committed in his presence..." But, (1) by its own terms Section 5–115.03 applied solely to "member[s] of the [MPD] police force;" (2) nothing in the statute obligated an officer to disregard a narrowing construction imposed by a Court and to enforce a constitutionally deficient statute as written; (3) Section 5–115.03 was repealed by temporary

---

[1] The WMATA Compact was negotiated and executed by Virginia, Maryland and the District of Columbia and then approved by Congress. Pub. L. No. 89-774, 80 Stat. 1322 (1966); Hall v. Wash. Metro. Area Transit Auth., 468 A.2d 970, 971 (D.C. 1983).

legislation that will expire on July 16, 2021;[5] and (4) there is nothing in the record that indicates that Metro Transit Police ever referred any of Mr. Burke's arrests to the OAG for prosecution. Burke declaration, ECF Document 3-1, ¶¶ 37-52 (first citation October 21, 2016; Mr. Burke tried but unable to get court date; ticket voided); *Id.* at ¶¶ 65-67 (Mr. Burke tried but unable to get court date for August 22, 2019 arrest).

WMATA's argument it does not have to follow *McFarlin* because it was not a party in McFarlin and it had no chance to be heard is a non-starter. Def's Mot. at 16-17. At the end of the day it is the District's statute not WMATA's. WMATA points to no provision of the law granting it a special right to be heard in which statutes the D.C. Council chooses to enact, D.C. Code § 1-206.02 (limitations on the Council's powers) or how the District courts choose to interpret them in criminal cases prosecuted by the District's prosecutors. D.C. Code § 23-101 (governing conduct of prosecutions in the District). If WMATA does not like how the *McFarlin* Court construed safety concerns it can refer Mr. Burke's arrests to the OAG for prosecution and challenge the application of the *McFarlin* Court's construction of the panhandling statute to parapets, or lobby the D.C. Council for changes to the existing statute.

## II.  Mr. Burke Has Standing to Bring Claims 2-4 so Defendant's Rule 12(b)(1) Motion to Dismiss These Claims Must Be Denied.

Mr. Burke has standing to bring Claims 2-4 so Defendant's Rule 12(b)(1) Motion to Dismiss these claims must be denied.

Mr. Burke's past injuries are the Metro Transit Police arrested Mr. Burke and issued him citations and ordered him to leave the area and left him with an arrest record for those arrests. Moreover, Mr. Burke suffers ongoing injury because he avoids panhandling at the Metro stations

---

[5] *See* § 114 of Comprehensive Policing and Justice Reform Second Emergency Amendment Act of 2020 (D.C. Act 23-336, July 22, 2020, 67 DCR 9148) and subsequent renewals of the emergency repeal.

because he fears Metro Transit Police will arrest him and/ or issue a barring order banishing him

from WMATA Metro stations and Metro trains and other Metro property. Mr. Burke has been

been "singled out [and] uniquely targeted by the . . . government for prosecution." *Ord*, 587 F.3d at

1141.

Mr. Burke's past injuries are fairly traceable to WMATA's permit policy as well as

Defendant's policy of enforcing the panhandling statute against him. Both polices are

interdependent causes not mutually exclusive policies. Alternatively, even if his past injuries are not

fairly traceable to the permit requirement he still faces a substantial risk of future injury from the

permit requirement. *see New York Republican State Comm. v. SEC*, 927 F.3d 499, 504 (D.C. Cir.

2019) (risk that plaintiff organization's ability to raise funds would be reduced as result of

challenged rule was substantial, which was sufficient for standing purposes). Mr. Burke

demonstrates at least that enforcing the law against him through the permit requirement will

remain a "special priority' for the government" if Mr. Burke gains the relief he seeks against

enforcement of the panhandling statute because of WMATA's system-wide no-panhandling policy.

Am. Compl. ¶ 105-107; *see Ord*, 587 F.3d at 1141.

Finally, if Mr. Burke had filed Claim 1 and then waited for a judgment in his favor before

filing Claims 2-4 in a subsequent action, he would run the risk of finding those claims barred by the

claim-splitting rules. *Natural Res. Def. Council v. EPA*, 513 F.3d 257, 261 (D.C. Cir. 2008) (claim

preclusion bars relitigation of claim, including any arguments and theories that should have been

raised in earlier suit on claim).

## A.  Mr. Burke's Past Injuries Are Fairly Traceable to WMATA's Permit Policy as well as Defendant's Policy of Enforcing the Panhandling Statute against Him.

Defendant contends that Mr. Burke cannot show that his injuries are traceable to

WMATA's permit policy because -- Defendant contends -- his injuries arise exclusively from

enforcement of the D.C. panhandling statute. Def.'s Mot., p. 12. This is contrary to both the law and the facts of the case because it rests on the misconception that injuries can traceable to only one cause, or that in this case Mr. Burke has not established that his injuries are traceable to both the enforcement of WMATA's no-panhandling policy or the District's panhandling statute, and WMATA's permit scheme.

As Defendant points out, standing is a prerequisite to the existence of a "Case[]" or "Controvers[y]," which is itself a precondition to the exercise of federal judicial power. *Attias v. CareFirst, Inc.*, 865 F.3d 620, 625 (2017). To demonstrate standing, a plaintiff must show that she has suffered (1) an "injury in fact" (2) that is "fairly traceable" to the defendant's actions and (3) that is "likely to be redressed" by the relief she seeks. *Id.*

Mr. Burke satisfies all three of these requirements for Claims 2-4: he suffered injuries, his injuries are fairly traceable to Defendant's actions, and his injuries are likely to be redressed by the declaratory and injunctive he seeks including by declaring his arrest a legal nullity and ordering Metro Transit Police to expunge all records of the arrest and recall all reports of the arrest it has made. Defendant does not really argue that the type of relief Mr. Burke seeks is not likely to redress his injuries. Defendant's redressability argument is really a component of its causation argument; the permit scheme did not cause the injury therefore enjoining the permit scheme will not redress the injury.

This argument like the causation arguments is built on the fiction that the panhandling statute applies at Metro stations rather than only in the *McFarlin* zones at Metro stations. Def.'s Mot. p. 14 ("WMATA does not issue permits for panhandling because WMATA does not allow panhandling at Metro stations consistent with the D.C. panhandling statute").

**B. Mr. Burke's Injuries are Fairly Traceable to Both Defendant's Permit Scheme and its Enforcement of the Panhandling Statute against Him.**

Mr. Burke's injuries are fairly traceable to both Defendant's permit scheme and its enforcement of the panhandling statute against him. *Attias v. CareFirst, Inc.*, 865 F.3d 620, 629 (2017) (*quoting Spokeo*, 136 S. Ct. at 1547). These are interdependent causes not mutually exclusive causes which can only occur sequentially like the movement of bodies in classical Newtonian physics. Article III standing "does not require that the defendant be the most immediate cause, or even a proximate cause, of the plaintiffs' injuries." *Attias*, 865 F.3d at 629. This principles applies to two causes by one actor as well as causes by different actors.

*1. Defendant uses both the panhandling in a Metro station statue and the permit scheme to implement WMATA's system-wide no-panhandling policy.*

Defendant both locked and bolted the door to Mr. Burke's panhandling in the public forum areas at Metro stations.



It not only enforced against him a statute that does not apply to him, but it also employed a permit scheme which amounted to an unconstitutional prior restraint on the First Amendment protected speech of panhandling solely for the sake of an alleged interest in general safety. Both of these policies in turn serve WMATA's overarching police of prohibiting panhandling system-wide at all of its property at Metrorail stations. Am. Compl. ¶ 105.

Just as it is impossible to apportion cause as to which is keeping a locked and barred door shut, the lock or the bar, so it is impossible to allocate cause between enforcing the statute and imposing a permit scheme. But one thing is sure – to open the door you must unlock the lock and remove the bar. To open the door to panhandling at Metro stations outside the *McFarlin* zones (defined below) Mr. Burke needs relief from both the illegal enforcement of the panhandling statute and the relief from the permit requirement. Article III standing does not require that the defendant be the most immediate cause, or even a proximate cause, of the plaintiffs' injuries; it requires only that those injuries be "fairly traceable" to the defendant. *Attias*, 865 F.3d at 629. *Attias* dealt with intertwined, interdependent causes where there was more than one actor; but the same principle applies when there is one actor but more than one cause. at the end of the analysis the question is are the plaintiff's injuries fairly traceable to the defendant's "actions" and the answer here is yes. *Id.*

WMATA uses different tools to enforce its system-wide no-panhandling policy in different jurisdictions because Metro Transit Police has only the powers and is subject to the same limitations as each of the police forces in the three different jurisdictions where WMATA operates. WMATA Compact, § 76(b); *Hall*, 468 A.2d at 971. The permit scheme is set forth in WMATA's "Use Regulations" and it applies system wide. Use Regulations, ¶ 2.2; Am. Compl. ¶ 115 et seq. WMATA can effectively punish failure to comply with the Use Regulations including the permit requirement and violations of the terms of a permit by banning people from WMATA property and enforcing the ban through the District's criminal trespass statute. *See* D.C. Code § 22–3302 (Unlawful entry on property); Use Regulations, ¶¶ 3.2.12 and 3.2.13.

The Metro Transit Police also enforce the panhandling statute "at the [Metro stations]" in the District even though the District of Columbia Court of Appeals narrowly construed the statutory phrase "subway station or stop" as meaning areas within fifteen feet of the escalator

entrance or exit at Metro stations (the "*McFarlin* zones") to avoid having to address Constitutional infirmities in the statute were the phrase "subway station or stop" meant to include all areas encompassed by a Metro station because much of those areas are public forums. *McFarlin*, 681 A.2d at 448. Claiming that WMATA cannot issue permits for panhandling at Metro stations in the District because the panhandling statute prohibits panhandling at Metro stations is disingenuous because no one but WMATA thinks the panhandling in a Metro station statute applies at Metro stations outside of the *McFarlin* zones, and wishing does not make it so. *See Ord*, 587 F.3d at 1141 (addressing whether a warrant or arrest would lack probable cause where the responsible officer, knowing that the arrestee is exempt from the criminal statute, nonetheless swears an affidavit in bad faith claiming the existence of probable cause).

Mr. Burke's injury in fact is "fairly traceable to the challenged conduct of the defendant" because these are intertwined interdependent causes not two mutually exclusive causes. *Attias*, 865 F.3d at 629. Article III standing, however, "does not require that the defendant be the most immediate cause, or even a proximate cause, of the plaintiffs' injuries." *Id.*

In *Attias* the D.C. Circuit held that the causation component of standing was satisfied in a data breach suit against defendant whose computers were hacked; although the hacker was the most immediate cause of plaintiffs' injuries, injury was ultimately traceable to defendant's alleged failure to secure plaintiffs' data. *Attias*, 865 F.3d at 629.

So WMATA cannot defeat standing by arguing that such injuries could be traced only to the illegal enforcement of the statute. "Article III does not require that the defendant be the most immediate cause, or even a proximate cause, of the [plaintiff's] injuries; it requires only that those injuries be fairly traceable to the defendant." *Attias*, 865 F.3d at 629. In *Attias* the court was analyzing causation in a case with more than one possible actor. But the analysis applies as well in

this case where there is one actor and two interdependent causes created by the same actor. See generally Fed. Prac. & Proc. Juris. § 3531.5 (Causation) (3d ed.)

2.  *Chief Pavlik's declaration does not conclusively establish that enforcing the panhandling statute against Mr. Burke was the exclusive cause of his injuries*

Chief Pavlik's declaration does not conclusively establish that enforcing the panhandling statute against Mr. Burke was the exclusive cause of his injuries. There is a conflict between the Pavlik Declaration and the arrest reports and the face of the citation reproduced in the Amended Complaint. Am. Compl. ¶ 88.

The Pavlik declaration [25-1] states that the citations that Metro Transit Police issued to Mr. Burke are attached to the declaration but they are not. What is attached are "Event Reports." Mr. Burke reproduced an image of the citation he received in the August 2019 incident. Am. Compl. ¶ 88. It lists panhandling as the cause of the arrest but it does not cite to the District's panhandling. *Id.*

The simple fact of the matter is that Chief Pavlik supported the arrests of Mr. Burke pursuant to the panhandling statute knowing that the District of Columbia Court of Appeals had narrowly construed the statute so that it did not apply to the areas where Mr. Burke was panhandling. Original Pavlik Decl. ¶ 7 (MTPD officers enforce the D.C. panhandling statute as written); second Pavlik Decl. ¶ 10; *see Ord*, 587 F.3d at 1141 (addressing whether a warrant or arrest would lack probable cause where the responsible officer, knowing that the arrestee is exempt from the criminal statute, nonetheless swears an affidavit in bad faith claiming the existence of probable cause).

Chief Pavlik also knew that the arrest powers of Metro Transit Police officers derive from the arrest powers of the MPD's police powers and that as it applies to the District, the WMATA Compact provides that "a member of the Metro Transit Police shall have the same powers,

including the power of arrest, and shall be subject to the same limitations, including regulatory limitations, in the performance of his duties as a member of the [MPD]."

He swore that "all officers in the District of Columbia, including MTPD officers, are required to uphold and enforce its laws" because overdetention D.C. Code § 5-115.03.

Under the analysis employed by the D.C. Circuit in Ord, Chief Pavlik's conduct in authorizing the enforcement of the panhandling statute "as written" against Mr. Burke without regard to the narrowing construction imposed by the *McFarlin* Court was not a good faith use of the statute. *Ord*, 587 F.3d at 1145. Therefore, it was not the sole cause of Mr. Burke's injuries under the standing rules.

Here, Chief Pavlik swears that he authorized the arrest of Mr. Burke knowing that the District of Columbia Court of Appeals had narrowly construed the statute so that it did not apply to the areas where Mr. Burke was panhandling. Original Pavlik Decl. ¶ 7 (MTPD officers enforce the D.C. panhandling statute as written); second Pavlik Decl. ¶ 10. He swore that "all officers in the District of Columbia, including MTPD officers, are required to uphold and enforce its laws" because overdetention D.C. Code § 5-115.03.

Chief Pavlik's contention that he is obligated by law to enforce Section 22-2302(b) "as written" by virtue of D.C. Code § 5-115.03 fails for several reasons. Section 5-115.03 provides in relevant part: "If any member of the police force shall neglect making any arrest for an offense against the laws of the United States committed in his presence..." But, (1) by its own terms Section 5-115.03 applied solely to "member[s] of the [MPD] police force;" (2) nothing in the statute obligated an officer to disregard a narrowing construction imposed by a Court and to enforce a

constitutionally deficient statute as written. Moreover, after the last arrest of Mr. Burke, Section 5–115.03  was repealed by temporary legislation that will expire on July 16, 2021. [6]

Moreover, there is nothing in the record that indicates that Metro Transit Police ever referred any of Mr. Burke's arrests to the OAG for prosecution. So, Mr. Burke was stymied in his attempts to get a court date to challenge Defendant's enforcement of the panhandling statute. *Ord*, 587 F.3d at 1141 ("Ord argues that D.C.'s only motivation for quashing the warrant was to prevent judicial review of his claimed exemption from the District's firearms law.).

In fact, Mr. Burke tried to get court dates and Metro Transit Police would not help him as it was required by the legend on the citation (Am. Compl. ¶ 88) and D.C. Code § 23-584(b)(1) and (b)(2). Am. Compl. ¶ 88; Burke declaration, ECF Document 3-1, ¶¶ 37-52 (first citation October 21, 2016; Mr. Burke tried but unable to get court date; ticket voided); *Id.* at ¶¶ 65-67 (Mr. Burke tried but unable to get court date for August 22, 2019 arrest).

Mr. Burke's point is that Chief Pavlik's declaration leaves room for the permit scheme as an interdependent or concurrent cause of Mr. Burke's injuries because Chief Pavlik knew that the panhandling statute did not apply to the areas where Mr. Burke was panhandling.

Where, as here, the jurisdictional facts are too intertwined with the merits to permit the determination to be made independently, and as here are disputed, the court should leave the jurisdictional determination to summary judgment or trial so Plaintiff can have the benefit of discovery. *Unite Here Local 25 v. Madison Ownership, LLC*, 850 F. Supp. 2d at 229-30.

## Conclusion

Respectfully submitted,

/s/William Claiborne

---

[6] *See* § 114 of Comprehensive Policing and Justice Reform Second Emergency Amendment Act of 2020 (D.C. Act 23-336, July 22, 2020, 67 DCR 9148) and subsequent renewals of the emergency repeal.

WILLIAM CLAIBORNE
D.C. Bar # 446579

Counsel for Plaintiff
717 D Street, N.W.
Suite 300
Washington, DC 20004
Phone 202/824-0700
Email claibornelaw@gmail.com